FILED ___ ENTERED
LODGED ___ RECEIVED

MAY 23 2001

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

CR 00-00550 #00000048

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VASILIY VYACHESLAVOVICH GORSHKOV, a/k/a VASSILI GORCHKOV, a/k/a "kvakin",

    Defendant

CASE NO. CR00-550C

ORDER

    This matter comes before the Court on Defendant's Motion to Suppress Seized Computer Data Defendant moves this Court for an order suppressing all computer data together with all derivative fruits therefrom seized by federal agents pursuant to a search warrant/supporting affidavit(s) dated on/about December 1, 2000 in case # 00-587 M, or seized otherwise from two computers located in Russia known as "tech.net ru" and ""freebsd tech net.ru." An evidentiary hearing was held on May 17, 2001.

## I. BACKGROUND

    Following an extensive national investigation of a series of computer hacker intrusions into the computer systems of businesses in the United States emanating from Russia, Alexey Ivanov was identified as one of the intruders  Around June, 2000, the FBI set up Invita, a "sting" computer security

ORDER – 1



1  company in Seattle. On/about November 10, 2000 Mr. Ivanov, along with his "business partner,"
2  Defendant Vasiliy Gorshkov, flew from Russia to SeaTac.
3     In Seattle, the two men met with undercover FBI agents at the Invita office located in Seattle
4  During the meeting and at the behest of the FBI, Defendant Gorshkov used an FBI IBM Thinkpad
5  computer ("IBM") ostensibly to demonstrate his computer hacking and computer security skills and to
6  access his computer system, "tech.net.ru", in Russia. After the meeting and demonstration, both
7  Gorshkov and Ivanov were arrested.
8     Following the Defendants' arrest, without Defendant Gorshkov's knowledge or consent, the FBI
9  searched and seized the IBM and all key strokes made by the Defendant while he used it, by means of a
10 "sniffer" program which allowed the FBI to track and store the information. The FBI thereby obtained
11 the Defendant's computer user name and password that he had used to access the Russian computer.
12    Armed with this information the FBI logged onto the subject computer(s) located in Russia.
13 Faced with the possibility that a confederate of the defendant could destroy the files in the Russian
14 computer, the FBI decided to download the file contents of the subject computer(s). This was done
15 without reading same until after a search warrant was obtained.
16    The FBI's downloading and copying of the downloaded data onto CD disk format took until
17 November 21. The warrant was applied for and obtained on December 1, 2000. The delay between the
18 downloading of the data and the procurement of the warrant was due to the slow process of obtaining
19 approval and permission from FBI headquarters and the Department of Justice.
20                              **II. ARGUMENT**
21 A.    **The FBI Did Not Violate the Fourth Amendment By Obtaining Defendant's Password**
22    The first issue is whether the FBI violated the Fourth Amendment by obtaining Defendant's user
23 name and password using a "sniffer program." The Court determines that under the circumstances of
24 this case, the FBI did not violate the Fourth Amendment.
25    In Rakas v. Illinois, 349 U.S. 128 (1978), the Court stated that "capacity to claim the protection
26 ORDER – 2

of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims a protection of the Amendment has a legitimate expectation of privacy in the invaded Place." Rakas, 349 U.S at 143. The two part test that a defendant must meet to establish an expectation of privacy is as follows:

1) The person must have an actual subjective expectation of privacy; and
2) That expectation is one that society is prepared to recognize as reasonable

Rakas, 349 U.S. at 143, 144 n.12.

The Court finds that Defendant could not have had an actual expectation of privacy in a private computer network belonging to a U.S. company. It was not his computer. When Defendant sat down at the networked computer at the Invita undercover site, he knew that the systems administrator could and likely would monitor his activities. Indeed, the undercover agents told Defendant that they wanted to watch in order to see what he was capable of doing. With the agents present in the room and frequently standing and looking over his shoulder, Defendant sat down at the networked computed and logged on to an account at a computer named "freebsd.tech net.ru." Therefore the Defendant had no expectation of privacy in his actions on the Invita computer. Even if Defendant could assert a subjective expectation of privacy, such an expectation would be unreasonable under these circumstances.

This case is similar to that of United States v David, 756 F. Supp. 1385 (D. Nev 1991) In David, the defendant was cooperating with law enforcement and meeting with an agent in the agent's office when he accessed his "computer memo book" in the agent's presence. The agent, looking over David's shoulder, saw the password he entered. The court found that David had no reasonable expectation of privacy because of the agent's presence and monitoring:

> Agent Peterson deliberately looked over David's shoulder to see the password to the book. David himself voluntarily accessed the book at a time when the agents were in close proximity to him. Agent Peterson was not required to stay seated across the table from David. Nor did David have a reasonable expectation that Peterson would not walk behind him, or remain outside of some imaginary zone of privacy within the enclosed room. It was Peterson's office, and he could move about in it wherever he pleased.

ORDER – 3

1  756 F. Supp. at 1390. The circumstances in the present case even more thoroughly refute the notion that
2  the Defendant had a reasonable expectation of privacy in his activities on the Invita computer, because it
3  was not his computer and the entire purpose for his use of it was to demonstrate his hacking acumen for
4  Invita personnel to review. Therefore, under the circumstances of this case, the FBI did not violate the
5  Fourth Amendment by obtaining Defendant's password.

**B.  The FBI Did Not Violate the Fourth Amendment By Accessing the Russian Computers and Downloading Data**

The second issue is whether the FBI violated the Fourth Amendment by using the password to access the Russian computers and downloading the data. The Court finds that the Fourth Amendment was inapplicable to the accessing of the Russian computer and the downloading of the data. Moreover, the Court determines that even if the accessing of the Russian computers and the downloading of the data was a search and seizure for purposes of the Fourth Amendment, the FBI's actions were reasonable under the exigent circumstances and therefore, no constitutional violation occurred.

**1.  Fourth Amendment Does Not Apply**

The use of the password to access the Russian computers and download the data did not constitute a Fourth Amendment violation. The Fourth Amendment does not apply to the agents' extraterritorial access to computers in Russia and their copying of data contained thereon. First, the Russian computers are not protected by the Fourth Amendment because they are property of a non-resident and located outside the territory of the United States. Under United States v. Verdugo-Urquidez, 494 U.S. 259 (1990), the Fourth Amendment does not apply to a search or seizure of a non-resident alien's property outside the territory of the United States. In this case, the computers accessed by the agents were located in Russia, as was the data contained on those computers that the agents copied. Until the copied data was transmitted to the United States, it was outside the territory of this country and not subject to the protections of the Fourth Amendment

Defendant attempts to distinguish Verdugo by first noting that the defendant in that case was

ORDER – 4

1  found not to have significant contacts with the United States because he involuntarily entered the
2  country after his arrest, while in this case Defendant Gorshkov voluntarily entered the country. The
3  Court finds, however, that a single entry into the United States that is made for a criminal purpose is
4  hardly the sort of voluntary association with this country that should qualify Defendant as part fo our
5  national community for purposes of the Fourth Amendment. Defendant also attempts to distinguish
6  Verdugo by noting that the search in Verdugo was effected by a joint effort made lawfully pursuant to
7  Mexican law, with the consent and authorization of Mexican officials, while in this case the search was
8  done by FBI fiat. Nothing in the opinion, however, indicates that the reach of the Fourth Amendment
9  turns on this issue. Therefore, the search of the Russian computers was not protected by the Fourth
10 Amendment.

11       Second, the agents' act of copying the data on the Russian computers was not a seizure under the
12 Fourth Amendment because it did not interfere with Defendant's or anyone else's possessory interest in
13 the data. The data remained intact and unaltered. It remained accessible to Defendant and any co-
14 conspirators or partners with whom he had shared access. The copying of the data had absolutely no
15 impact on his possessory rights.[1] Therefore it was not a seizure under the Fourth Amendment. See
16 Arizona v. Hicks, 480 U.S. 321, 324 (1987) (recording of serial number on suspected stolen property
17 was not seizure because it did not "meaningfully interfere" with respondent's possessory interest in
18 either the serial number or the equipment"); Bills v. Aseltine, 958 F.2d 697, 707 (6th Cir. 1992) (officer's
19 photographic recording of visual images of scene was not seizure because it did not "meaningfully
20 interfere" with any possessory interest).

21 **2.     Even if the Fourth Amendment Applied, the Search and Seizure Were Reasonable**

22       Even if the Fourth Amendment were to apply to the Government's actions, the Court finds that

---

[1] Defendant argues that the Government seized the data on the Russian computers because the *tar* command block's other users from accessing the data. After hearing the testimony on this subject, the Court is convinced that no authorized user is prevented from accessing the files that are being *tarred*

ORDER – 5

1 those actions were reasonable under all of the circumstances and therefore met Fourth Amendment
2 requirements. The Supreme Court recently stated "We have found no case in which this Court has held
3 unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss
4 of evidence while the police diligently obtained a warrant in a reasonable period of time." Illinois v.
5 McArthur, 121 S. Ct. 946, 950-51 (2001); see Segura v. United States, 468 U.S. 796 (1984) (holding that
6 it was not an unreasonable search or seizure under the Fourth Amendment when officers secured the
7 premises to preserve the status quo until a search warrant was obtained 19 hours later).

8     In McArthur, the Court held that it was "reasonable" – and thus consistent with the Fourth
9 Amendment – for police to prevent someone from entering his trailer home until a search warrant could
10 be obtained, based on the risk that evidence might be destroyed otherwise. In the context of pressing or
11 urgent law enforcement needs such as exigent circumstances, the Fourth Amendment requires courts to
12 "balance the privacy-related and law enforcement related concerns to determine if the intrusion was
13 reasonable." McArthur, 121 S. Ct. at 950. Several circumstances supported the Court's conclusion in
14 McArthur that the restraint met with Fourth Amendment requirements: (1) the police had probable cause
15 to believe that the trailer home contained evidence of a crime, (2) the police had good reason to fear that
16 if they did not restrain the defendant, he would destroy the evidence before a warrant could be obtained,
17 (3) the police made "reasonable efforts" to reconcile law enforcement needs with the defendant's privacy
18 needs, leaving his home and his belongings intact until the warrant was issued; and (4) the police
19 imposed the restraint for a limited period of time. Id. at 950-51.

20     Analogous circumstances exist in the present case. The Government's agents had probable cause
21 to believe that the Russian computers contained evidence of crimes. The agents had good reason to fear
22 that if they did not copy the data, Defendant's coconspirators would destroy the evidence, or make it

26 ORDER – 6

unavailable before any assistance could be obtained from Russian authorities.[2] The agents made "reasonable efforts" to reconcile their needs with Defendant's privacy interest by copying the data, without altering it or examining its contents until a search warrant could be obtained. Finally, the agents imposed no "restraint" on Defendant's data, and obtained a search warrant as soon as diplomatic notification was made to Russia's government.[3] Therefore, under the law of the Fourth Amendment, because the agents were acting under exigent circumstances, the agents' actions in accessing the Russian computers and downloading the data without a warrant were fully legal and the evidence should not be suppressed.[4]

---

[2] On the weekend of the arrest, the FBI notified the Russian Consulate that the defendants had been arrested, and it was a reasonable presumption that their families, and ultimately their colleagues, would be notified, as well. Electronic data and evidence is notoriously ephemeral. It can be moved to a different computer with ease, or access to it can be prevented with a simple change of password or pull of the power plug. The agents faced the impending likelihood that one of Defendant's coconspirators in Russia would change passwords or pull the plug on the Russian computers.

[3] The Court notes that the because Defendant was not deprived of any possessory interest in the copied computer data, the time period between the downloads and the issuance of the warrant is not significant. The Ninth Circuit has made it clear that the significance of the length of time for detention of property depends on "the practical consequences of the delay." See United States v. Johnson, 990 F.2d 1129, 1132 (9th Cir. 1993). In this case, the delay had no practical consequences whatsoever for the Defendant. Indeed, the delay in this case was occasioned solely to accommodate the notification of Russian authorities through official channels that the download had taken place, a process that was also affected by the intervening Thanksgiving holiday. The delay did not defeat exigent circumstances. See United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998) (11-day delay was not unreasonable where, inter alia, period included holidays and seizure did not disrupt defendant's travel or otherwise restrain his liberty.

[4] As to Defendant's contention that the FBI's actions were unreasonable and illegal because they failed to comply with Russian law, the Court finds that Russian law does not apply to the agents' actions in this case and even if it were to apply, the agents sufficiently complied with the relevant portions of the Criminal Process Code of Russia.
As to Defendant's contention that the evidence should be suppressed based on the Electronic Communications Privacy Act, 18 U.S.C §§ 2701-2711, and the Wiretap Act or "Title III," 18 U.S.C § 2510, et seq., , the Government is correct in noting that a statutory suppression remedy is not available under either of these statutes for the FBI's alleged violations.

ORDER – 7

### C. Independent Source Doctrine Applies

Even if the Court were to find that the copying and downloading of the data was somehow a violation of the Fourth Amendment, the evidence at issue is not subject to suppression because it was obtained through the independent source of a valid search warrant that did not depend upon anything observed during the copying and downloading of the files. Probable cause for the warrant was based entirely upon information that was independent of the copying and downloading. As a result, the affidavit provided an independent source for the warrant. See Segura v. United States, 486 U.S. 796, 799, 813-16 (plurality opinion) (affidavit provided independent source where there was abundant probable cause and agents in no way exploited their warrantless entry into apartment); United States v. Rodriguez, 869 F.2d 479, 485-86 (9th Cir. 1989) (even if warrantless entry into residence was unlawful, items seized under subsequent valid warrant are not subject to suppression as long as securing of premises was supported by probable cause).

### D. The Warrant Was Not Overbroad

The Court also finds that the warrant in this case was not overbroad. The Court notes that the magnitude of the information answerable to the warrant is a reflection of the astonishingly broad scope of the alleged criminal activity of these Defendants. The warrant in this case was not subject to the flaws of the warrant in United States v. Kow, 58 F.3d 423 (9th Cir. 1995). The face of the warrant specified that the search was for evidence of specified crimes, and statutory citations were included both on the face of the warrant and in Attachment A. That Attachment, in addition to limiting the search to information "that constitutes evidence, fruits or instrumentalities" of the specified crimes, particularly described the types of information to be the subject of the search. Therefore, the warrant was not overbroad.

### III. CONCLUSION

Having carefully considered all of the testimony in this matter and all of the materials submitted, for the above mentioned reasons, the Court hereby DENIES the motion.

1
2  SO ORDERED this 23 day of May, 2001.
3
4  _____
   CHIEF UNITED STATES DISTRICT JUDGE
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26